# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Leslie D. Nolan, individually and
on behalf of all others similarly situated,
     Plaintiff,

v.

Case No. 2:18-cv-13359-DML-SDD
Hon. David M. Lawson

The Detroit Edison Company;
DTE Energy Corporate Services LLC,
an Affiliated Company of the Detroit
Edison Company; DTE Energy Company
Retirement Plan; DTE Energy Benefit Plan
Administration Committee; Janet Posler, as
Designated Representative for DTE Energy
Benefit Plan Administration Committee;
Qualified Plan Appeals Committee [Michael
S. Cooper, Renee Moran, Jerome Hooper]
    Defendants

**CLASS ACTION**

| | |
|---|---|
| Eva T. Cantarella (P51917) | Christopher K. Meyer; Mark D. Blocker & |
| Bradley J. Schram (P26337) | Benjamin I. Friedman |
| Robert P. Geller (P34391) | Sidley Austin LLP |
| Patricia A. Stamler (P35905) | One South Dearborn St. |
| Hertz Schram PC | Chicago, Ill. 60603 |
| 1760 S. Telegraph Rd. | o. 312-853-0523 |
| Bloomfield Hills, MI 48302 | cmeyer@sidley.com; mblocker@sidley.com; |
| o. 248-335-5000 | and benjamin.friedman@sidley.com |
| ecantarella@hertzschram.com | |
| bschram@hertzschram.com | |
| rgeller@hertzschram.com | Paula Johnson-Bacon (P55862) |
| pstamler@hertzschram.com | DTE Energy, One Energy Plaza |
| *Attorneys for Leslie D. Nolan* | Detroit, MI 48226 |
| *and all others similarly situated* | o. 313-235-7052 |
| | paula.bacon@dteenergy.com |
| | *Attorneys for Defendants* |

## PLAINTIFF'S UNOPPOSED MOTION FOR CERTIFICATION OF CONDITIONAL SETTLEMENT CLASS AND PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

Plaintiff Leslie D. Nolan ("Nolan"), through her attorneys Hertz Schram PC, hereby moves, pursuant to Fed. Rs. Civ. P. 23(a), 23(b) and 23(e), for certification of a conditional settlement class and preliminary approval of a settlement agreement ("Motion") on behalf of herself and all others similarly situated, as more fully set forth in her brief in support of this Motion.

Defendants do not oppose the relief requested herein provided the Court preliminarily approves the Settlement Agreement.

Respectfully submitted March 28, 2022

/s/ Eva T. Cantarella
Eva T. Cantarella (P51917)
Robert P. Geller (P34391)
Patricia A. Stamler (P35905)
Bradley J. Schram (P26337)
Hertz Schram PC
1760 S. Telegraph Rd.
Bloomfield Hills, MI 48302
o. 248-335-5000; f. 248-3353346
ecantarella@hertzschram.com
*Attorneys for Leslie D. Nolan and the putative Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Leslie D. Nolan, individually and
on behalf of all others similarly situated,
     Plaintiff,

v.

The Detroit Edison Company;
DTE Energy Corporate Services LLC,
an Affiliated Company of the Detroit
Edison Company; DTE Energy Company
Retirement Plan; DTE Energy Benefit Plan
Administration Committee; Janet Posler, as
Designated Representative for DTE Energy
Benefit Plan Administration Committee;
Qualified Plan Appeals Committee [Michael
S. Cooper, Renee Moran, Jerome Hooper]
     Defendants

Case No. 2:18-cv-13359-DML-SDD
Hon. David M. Lawson

**CLASS ACTION**

| | |
|---|---|
| Eva T. Cantarella (P51917) | Christopher K. Meyer; Mark D. Blocker & |
| Bradley J. Schram (P26337) | Benjamin I. Friedman |
| Robert P. Geller (P34391) | Sidley Austin LLP |
| Patricia A. Stamler (P35905) | One South Dearborn St. |
| Hertz Schram PC | Chicago, Ill. 60603 |
| 1760 S. Telegraph Rd. | o. 312-853-0523 |
| Bloomfield Hills, MI 48302 | cmeyer@sidley.com; mblocker@sidley.com; |
| o. 248-335-5000 | benjamin.friedman@sidley.com |
| ecantarella@hertzschram.com | |
| bschram@hertzschram.com | Paula Johnson-Bacon (P55862) |
| rgeller@hertzschram.com | DTE Energy, One Energy Plaza |
| pstamler@hertzschram.com | Detroit, MI 48226 |
| *Attorneys for Leslie D. Nolan* | o. 313-235-7052 |
| *and all others similarly situated* | paula.bacon@dteenergy.com |
| | *Attorneys for Defendants* |

## BRIEF IN SUPPORT OF UNOPPOSED MOTION FOR CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS AND PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

## TABLE OF CONTENTS

QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

CONTROLLING/MOST APPROPRIATE AUTHORITY . . . . . . . . . . . . . . . . . iv

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

I.      FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     PROCEEDINGS TO DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    THE CLASS NOLAN SEEKS TO CERTIFY . . . . . . . . . . . . . . . . . . . . . 4

IV.     CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE . 5

        A.     All Rule 23(a) Prerequisites Are Satisfied for Purposes of
               Settlement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

               1.     Numerosity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

               2.     Commonality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

               3.     Typicality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

               4.     Adequacy of the representative parties . . . . . . . . . . . . . . . . . 8

                      a.     Nolan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

                      b.     Nolan's attorneys. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        B.     Certification Is Proper Under Rule 23(b)(1)(A) . . . . . . . . . . . . . . . 13

V.      ALL RULE 23(e) REQUIREMENTS FOR APPROVAL OF THE
        SETTLEMENT HAVE BEEN MET . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        A.     The Settlement Agreement Is Fair, Reasonable and Adequate. . . . . 14

               1.     There exists no risk of fraud or collusion . . . . . . . . . . . . . . . 15

2.  The Settlement Agreement minimizes the complexities, expense, and duration of the litigation . . . . . . . . . . . . . . . . . 15

3.  There was considerable discovery. . . . . . . . . . . . . . . . . . . . . 16

4.  The likelihood of success was uncertain. . . . . . . . . . . . . . . . 16

5.  Nolan and her attorneys believe the Settlement Agreement is fair, reasonable and adequate. . . . . . . . . . . . . . . . . . . . . . . . 17

6.  Absent Class members will be given an opportunity to object . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

7.  The Settlement Agreement serves the public interest. . . . . . . 19

B.  The Manner of Notifying the Class About the Settlement Agreement Is Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

C.  The Notice Provides Class Members with the Information Needed to Make an Informed Decision as to Whether the Settlement Agreement Serves Their Interests . . . . . . . . . . . . . . . . . . 20

VI.  CONCLUSION AND RELIEF REQUESTED . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-23

## QUESTIONS PRESENTED

Should a settlement class be certified under Fed. Rs. Civ. P. 23(a) and 23(b)(1)(A)?

Should the Settlement Agreement Be Preliminarily Approved?

To Both Questions, Plaintiff states "Yes."

**CONTROLLING/MOST APPROPRIATE AUTHORITY PERTAINING TO CLASS CERTIFICATION**

*Glazer v. Whirlpool Corp.*, 722 F.3d 838 (6th Cir. 2013) . . . . . . . . . . . . . . . . . . 6, 7

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012) . . . . . . . . . . . 5-8

Fed. R. Civ. P. 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 23(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**CONTROLLING/MOST APPROPRIATE AUTHORITY PERTAINING TO PRELIMINARY APPROVAL**

*UAW v. Gen. Motors Corp.*
497 F.3d 615 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 19, 20

Fed. R. Civ. P. 23(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

# INDEX OF AUTHORITIES

## Cases

*Cameron v. Bouchard*
No. 20-10949, 2021 WL 3087986 (E.D. Mich. July 22, 2021) . . . . . . . . . . . . . . 14

*Clark v. Duke Univ.*
No. 1:16-cv-1044, 2019 U.S. Dist. LEXIS 105696 (M.D. N.C. June 24, 2019) . . 17

*Clark Equip. Co. v. Int'l Union, Allied Indus. Workers*
803 F.2d 878 (6th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 44 (6th Cir. 2002) . . . . . . . 12

*Glazer v. Whirlpool Corp.*, 722 F.3d 838 (6th Cir. 2013) . . . . . . . . . . . . . . . . . . 6, 7

*Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992) . . . . . . . 15, 19

*High St. Rehab., LLC v. American Specialty Health* Inc.
No. 2:12-cv-07243, 2019 WL 4140784 (E.D. Pa. Aug. 29, 2019) . . . . . . . . . . . 17

*Humphrey v. United Way*, 2007 U.S. Dist. LEXIS 59557
No 05-0758 (S.D. Tex. Aug. 14, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re American Medical Sys.*, 75 F.3d 1069 (6th Cir. 1996) . . . . . . . . . . . . . . . . 6-8

*In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508 (E.D. Mich. 2003) . . . . . . . . 19

*In re Flint Water Cases*
No. 5:16-cv-10444, 2021 WL 5237198 (E.D. Mich. Nov. 20, 2021) . . . . . . . . . 18

*In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075 (6th Cir. 1984) . . . . . . . 14

*In re Pool Prods. Distrib. Mkt. Antitrust Litig*
MDL No. 2328 Section R(2), 2015 WL 452880 (E.D. La. July 27, 2015) . . . . . 17

*Nolan v. Detroit Edison Co.*, 991 F.3d 697 (6th Cir. 2021) . . . . . . . . . . . . . . . . . . 3

*Sosna v. Iowa*, 419 U.S. 393; 95 S. Ct. 553 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier,* 262 F.3d 559 (6th Cir. 2001) . 13

*UAW v. Gen. Motors Corp.,* 497 F.3d 615 (6th Cir. 2007). . . . . . . . . . . . . 14, 19, 20

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012). . . . . . . . . . . . 5-8

## Statutes

29 U.S.C. §1001 [ERISA §2] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

29 U.S.C. §1022(a) [ERISA §102(a)] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## Court Rules

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## Articles

*Securities Class Action Settlements: 2016 Review and Analysis*
(Cornerstone Research, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## I.   FACTUAL BACKGROUND

Prior to 2002, Defendant Detroit Edison Company ("DTE") sponsored the DTE Energy Company Retirement Plan, as amended, restated and renamed effective December 31, 2001 ("Plan"). Ex. 1.  The Plan contained two formulas for computing Participants' pensions--one for Participants in the Traditional Plan ("TP"), and the other for Participants who chose to move to the Cash Balance Plan ("CBP").  *Id.* at §§2.01 and 6.01, pp3, 37.

Under the TP formula, the benefit was computed as a percentage-of-pay multiplied by years of service and was payable in the form of a monthly annuity.  *Id.* at §6.04, p38.  Under the CBP formula, the benefit was computed by reference to a hypothetical account that started with an opening balance to which Contribution Credits ("CCs") (a percentage of compensation) and Interest Credits ("ICs") were added each year, and then was payable as either a lump sum or annuity.  *Id.* at §5.02, pp32-33.

In February 2002, DTE offered all Participants in the TP the option to move to the CBP formula.  In connection with this offer, DTE sent all such Participants a Retirement Choice Decision Guide ("Guide").  Ex. 2 Guide p2.  Some Participants elected to convert to the CBP formula, but many Participants did not.  The proposed settlement class consists of persons who elected to convert.  Nolan and the putative Class members elected to accept the offer.  For such Participants who accepted the

offer, their retirement benefits were computed under the CBP formula effective June 1, 2002.  Ex. 1 Plan §5.02(b), p32.

When Nolan transferred to the CBP, she had 22½ years of service with DTE and had earned a pension under the TP in the amount of $1,581.19/month.  Ex. 3, Pension Calculation Statement p2.  Fifteen-and-one-half years later when Nolan retired, DTE determined she was entitled to this same monthly amount by operation of the Plan terms because her TP benefit was larger than her CBP benefit.  Ex. 4, 11/06/2017 Letter from DTE to Nolan p3.  Nolan alleges this determination was incorrect based on both the terms of the Plan and the Guide.  She claims that the Guide promised that if she transferred to the CBP she would receive (A) her "frozen and protected" TP benefit earned before the transfer, plus (B) CCs and ICs she earned thereafter under the CBP ("the A+B Benefit Promise").  Ex. 2 Guide pp 7, 8.  She also claims that §§2.01 and 6.01 of the official Plan document, when read together, also communicate the A+B Benefit Promise.  Ex. 1 pp 3, 37.  DTE disputes Nolan's interpretation of the Guide and Plan, reasoning it is contrary to the plain language of the Plan and would have the effect of double-counting the "A" benefit.

## II.  PROCEEDINGS TO DATE

On October 26, 2018, Nolan filed a three-count putative Class Action Complaint against DTE, one of its affiliates, the DTE Energy Benefit Plan Administration Committee, and individuals involved in the administrative denial of

her claims (collectively, "DTE").  Count I alleged that DTE breached the Plan terms by failing to honor the A+B Benefit Promise.  ECF 1 PageID 38-40.  Count II alleged the Guide violated ERISA §102's disclosure rules.  *Id*. PageID 41-49.  Count III alleged that DTE violated ERISA §204(h) by failing to provide a proper pre-amendment notice.  *Id*. PageID 49-53.

DTE filed a Motion to Dismiss the Complaint, which this Court granted.  ECF 33.  The Sixth Circuit affirmed the dismissal of Count III, reversed the dismissal of Counts I and II, and remanded this matter for further proceedings.  *Nolan v. Detroit Edison Co.*, 991 F.3d 697, 716 (6th Cir. 2021).

On December 22, 2021, the parties reached a settlement as to the amount payable to the putative Class members, and agreed to work out the details about how that amount would be allocated among Class members and certain other details of the settlement.  The parties have now resolved all of those issues.

The Settlement Agreement provides a gross settlement amount of $5,500,000.  Ex. 10 §IV.A.  After deducting the amount Plaintiff's counsel intends to seek for attorneys' fees and expenses, the requested service award for Nolan, and independent fiduciary fees, the Net Settlement Amount will be $3,563,394.59.  *Id.* §IV.B. Under Plaintiff's proposed Plan of Allocation, all 466 Class members will receive a portion of the settlement and 435 of those Class members will receive 33.5% of their A+B damages.  The other 31 Class members were either not vested or had nominal or no

A+B damages, and therefore will receive small amounts totaling $3,750.

The settlement proceeds will be distributed in one of two ways. Participants who took a lump sum benefit or whose benefit type is unknown will receive their portion of the settlement in a lump sum. For Participants who received an annuity, they will receive a portion of their settlement proceeds as a lump sum and a portion as an increase to their monthly annuity.

In exchange for this substantial recovery, the Settlement Agreement provides for customary releases. Specifically, the Settlement Agreement provides that Plaintiff and the Class will release Defendants and certain other individuals and entities of all asserted and potential claims arising out of the allegations in the Complaint. The release also includes claims for attorneys' fees, costs, and expenses. Because the Settlement Agreement contemplates a non-opt-out Class, all Class members will be releasing their claims.

## III.   THE CLASS NOLAN SEEKS TO CERTIFY

Nolan brought her claims on behalf of "All DTE employees who, in 2002, elected to transfer from DTE's Traditional Plan to DTE's Cash Balance Plan." Complaint ¶124, ECF 1 PageID.34. There are 466 individuals that transferred from the TP to the CBP. Therefore, Plaintiff proposes the following definition of the Settlement Class:

> All DTE employees who, in 2002, elected to transfer from the DTE Traditional Plan to the DTE Cash Balance Plan, (as those terms are defined in the DTE Energy Company Retirement Plan (the "Plan") attached as Exhibit 1 to the Complaint, and the beneficiaries of any deceased such DTE employees.

The proposed Class definition is sufficiently definite for the Court to determine whether a particular individual is a Class member--a prerequisite for certification. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-538 (6th Cir. 2012) (additional citations omitted).

## IV.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

Pursuant to Fed. R. Civ. P. 23(a), one or more members of a class may sue as the representative(s) on behalf of all members of the class if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition, at least one of the criteria under Fed. R. Civ. P. 23(b) must be met.

A court that certifies a class must also appoint class counsel. Fed. R. Civ. P. 23(g)(1). In appointing counsel, the Court must consider (i) the work by counsel in identifying or investigating potential claims; (ii) counsel's experience in handling class actions or other complex litigation and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; (iv) the resources counsel will

commit to representing the class; and (v) any other matter pertinent to the appointment.  *Id.*  Above all, class counsel must fairly and adequately represent the interests of the class.  Fed. R. Civ. P 23(g)(4).

### A.   All Rule 23(a) Prerequisites Are Satisfied for Purposes of Settlement.

#### 1.   Numerosity

Fed. R. Civ. P. 23(a)(1) imposes "no strict numerical test" for determining numerosity, and district courts are not required to determine the precise number of class members.  *Young*, 693 F.3d at 541.  Rather, the court may make "reasonable inferences" regarding the number of class members and whether that number makes joinder impracticable.  *Id.* at 541.  A class of 35 generally satisfies the numerosity requirement.  *Id.* at 542; *In re American Medical Sys*., 75 F.3d 1069, 1076 (6th Cir. 1996).  Therefore, a class of 466 satisfies the numerosity requirement.

#### 2.   Commonality

To demonstrate commonality under Fed. R. Civ. P. 23(a)(2), the plaintiffs' claim(s) must depend upon a common contention, the truth or falsity of which will resolve the lawsuit for the putative class.  *Glazer v. Whirlpool Corp.*, 722 F.3d 838, 852 (6th Cir. 2013); *Young*, 693 F.3d at 542.  There need be only one common issue; individual issues will not preclude a finding of commonality.  *Glazer*, 722 F.3d at 853; *In re American Medical Sys.,* 75 F.3d at 1080.

The common questions in this case are–

1.    Whether or not §§2.01 and 6.01 of the Plan, read together, provide for the A+B Benefit Promise?

2.    Whether the Guide led the putative Class members to believe DTE would compute their pensions in accordance with the A+B Benefit Promise articulated in question 1?

Because resolution of these questions would determine Defendants' liability as to all Settlement Class members, Plaintiff contends that commonality is satisfied.

### 3.    Typicality

Typicality under Fed. R. Civ. P. 23(a)(3) is satisfied if the class members' claims are encompassed by the named plaintiff's claims such that their interests are aligned and the class representative, in pursuing his/her own interests, necessarily also advocates for the interests of the class members. *Glazer*, 722 F.3d at 852-853; *Young*, 693 F.3d at 542.  In practice, commonality and typicality tend to merge because both serve as "guideposts" for determining whether the named plaintiff's claims and class claims "are so interrelated that the interests of the Class members will be fairly and adequately protected in their absence." *Glazer* at 853; *In re American Medical Sys.*, 75 F.3d at 1082.  Thus, a named plaintiff's claim "is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of [the] other Class members" and is "based on the same legal theory." *Id*.

Nolan's claims and those of every Settlement Class member depend upon whether Defendants were required to compute their pensions by applying the A+B Benefit Promise.  Nolan's claim could be brought by "any" DTE TP Participant who elected in 2002 to transfer to the CBP.  Therefore, Nolan's claims are aligned with those of the other Settlement Class members and, in pursuing her own interests, Nolan necessarily advocates for their interests, as well.

### 4.     Adequacy of the representative parties

The Sixth Circuit has articulated two criteria for determining the adequacy of the representative parties under Fed. R. Civ. P. 23(a)(4): (i) the named class representative must have interests common to those of the unnamed class members, and (ii) it must appear that the named class representative will "vigorously prosecute the interests of the Class through qualified counsel."  *In re American Medical Sys.*, 75 F.3d at 1083; *Young*, 693 F.3d at 543.  Regarding the first criterion, where it is unlikely the named representative would have interests that conflict with those of the unnamed class members, and the interests of the class have been competently urged at every level of the proceedings, the test of Rule 23(a)(4) is met.  *Sosna v. Iowa*, 419 U.S. 393, 403; 95 S. Ct. 553 (1975).  As to the second criterion, the inquiry is whether class counsel are "qualified, experienced and generally able to conduct the litigation." *Young*, 693 F.3d at 543.

### a.  Nolan

Nolan's interests are identical to those of the other Settlement Class members, as all sought rulings from this Court that would require their benefits to be recomputed consistent with the A+B Benefit Promise.  Accordingly, there exists no conflict between Nolan and the other putative Class members.  Moreover, Nolan has been actively engaged in this litigation, including responding to discovery requests, having her deposition taken, and reviewing all principal filings.  Nolan Affidavit, Ex. 5.

### b.  Nolan's attorneys

Nolan has also retained highly experienced ERISA, pension, labor law, and class action attorneys to vigorously prosecute the claims on behalf of herself and the putative Class.  The record demonstrates that Nolan's attorneys are committed to prosecuting the claims until there is a final non-appealable resolution of the dispute.

Nolan's attorneys previously prosecuted fourteen class actions for benefits owed under a pension plan, all but one of which were governed by ERISA.  *See* Affidavit of Eva T. Cantarella ("Cantarella"), Ex. 6; Affidavit of Robert P. Geller ("Geller"), Ex. 7; and Affidavit of Bradley J. Schram ("Schram"), Ex. 8.  In several of these cases, the district courts commented extensively on the expertise of Nolan's attorneys in litigating class claims for ERISA benefits:

The court [*27] also finds that Humphrey's counsel is a zealous and competent representative. Plaintiff's counsel in charge, Eva Cantarella ("Cantarella"), and her law firm, Hertz, Schram & Saretsky, P.C. ("HS&S") [now Hertz Schram PC], are very experienced ERISA Class action litigators. See Crosby v. Bowater Inc. Retirement Plan for Salaried Employees of Great Northern Paper, Inc., 212 F.R.D. 350, 353-54 (W.D. Mich. 2002) (noting that HS&S is "nationally recognized for its plaintiff representation in ERISA and employee benefit cases" and finding its lawyers "to be a very experienced and capable advocates for the Class"), rev'd. on other grounds, 382 F.3d 587 (6th Cir. 2004), cert denied, 544 U.S. 976, 125 S. Ct. 1844, 161 L. Ed. 2d 726 (2005). Cantarella, a partner at HS&S, has participated in ten pension plan Class actions [now fourteen] and has also successfully prosecuted non-Class claims for ERISA benefits, including pension benefits. (See Cantarella Aff. PP 10-14, Doc. 44 Ex. D.) The other attorneys working on Humphrey's behalf are equally experienced and capable. (See Bradley Schram Aff., Doc. 44 Ex. B; Robert Geller Aff., Doc. 44, Ex. C.) Together they have relentlessly advocated on behalf of Humphrey and the putative Class members. This effort is typified by the [*28] extensive and detailed briefing provided not only in this motion for Class certification but also on Plaintiff's cross motion for summary judgment. (See generally Docs. 41-55, 59, 64, 68, & 84.) Moreover, Cantarella presented her case at the hearing on Class certification in a cogent and prepared manner. For these reasons, the court finds that Plaintiff's counsel and her firm are more than adequate to represent the Class action.

*Humphrey v. United Way*, 2007 U.S. Dist. LEXIS 59557, No 05-0758 *27-28 (S.D. Tex. Aug. 14, 2007). Indeed, Nolan's attorneys have recovered over $125 million dollars in ERISA pension benefits for participants and their beneficiaries. Cantarella Affidavit, Ex. 6; Geller Affidavit, Ex. 7; and Schram Affidavit, Ex. 8.

Cantarella, a partner, came to Hertz Schram PC ("HSPC") from a national law firm.  Cantarella Affidavit, Ex. 6.  Cantarella is responsible for investigating and evaluating <u>all</u> benefit claims reviewed at HSPC that arise under a pension plan and for recommending those that should be prosecuted.  *Id.*  Cantarella is a recognized expert on pension plans, and she has been a guest speaker/presenter on pension issues in a variety of fora, including the Internal Revenue Service and Department of Treasury where she has given testimony on pension issues.  *Id.*  Cantarella has been solicited for comment on pension issues by our nation's legislators, employee and retiree organizations, and reporters, and she has been quoted on pension issues in numerous business and legal publications.  *Id.*  To date, she has collectively published over 450 pension/retirement posts and blogs on her Pension Justice 4 You Facebook page and the firm's PensionJustice4You.net website.  *Id.*

Geller and Patricia A. Stamler ("Stamler"), shareholders at HSPC, have both practiced law for 38 years.  Geller Affidavit, Ex. 7; Stamler Affidavit, Ex. 9.  Like Cantarella, Geller previously actively participated in litigating fourteen pension plan class actions.  Geller Affidavit, Ex. 7.  Stamler primarily practices in the areas of civil rights, qui tam, and complex civil litigation (including class action and collective action litigation), and she has won numerous awards for her advocacy in these areas, as well as in other labor-law areas.  Stamler Affidavit, Ex. 9.  While employed by HSPC, Stamler has assisted with two of the pension plan class actions listed in the

foregoing affidavits and litigated a major individual claim for pension benefits. *Id.*

Schram, the founding shareholder of HSPC, has practiced law for 44 years, and has substantial class action experience, including litigating class claims for ERISA benefits. Schram Affidavit, Ex. 8.

Based on the foregoing and the attached Affidavits, there should be no doubt that Nolan's attorneys will fairly and adequately represent the Settlement Class.

### B. Certification Is Proper Under Rule 23(b)(1)(A)

Pursuant to Fed. R. Civ. P. 23(b)(1)(A), class certification is proper if Rule 23(a) is satisfied and if "(1) prosecuting separate actions by or against individual class members would create a risk of . . . (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."

Although a district court "may" order "appropriate notice" to the members of a class certified under Rule 23(b)(1) [Fed. R. Civ. P. 23(c)(2)], it is not required. *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 447 (6th Cir. 2002). Nonetheless, the Settlement Agreement contemplates sending a notice to the Settlement Class members. Ex. 10 §III.

Here, if the Settlement Class is not certified, there is a risk that individual Class members could bring a multiplicity of separate actions against Defendants, with a risk of inconsistent or varying adjudications that could establish incompatible standards

12

of conduct for Defendants.  Class certification will conserve judicial resources and provide an efficient mechanism for achieving unitary adjudication as to all Settlement Class members.  Certification under Rule 23(b)(1)(A) is plainly appropriate.

## V.   ALL RULE 23(e) REQUIREMENTS FOR APPROVAL OF THE SETTLEMENT HAVE BEEN MET

Under Rule 23(e), the claims of members of a proposed Class may be settled only with the Court's approval and in accordance with the following procedures:

1.   The Court must direct notice in a "reasonable manner" to all Class members who would be bound by the settlement,

2.   The Court may approve the settlement only after a hearing and on a finding that the settlement is "fair, reasonable and adequate",

3.   The parties must "file a statement identifying any agreement made in connection with the proposal"–here the Settlement Agreement,

4.   n/a [applies to opt out classes certified under Rule 23(b)(3)],

5.   Class members must be given an opportunity to object to the proposed settlement.

Fed. R. Civ. P. 23(e).

The fairness hearing "need not entail the entire panoply of protections afforded by a full-blown trial on the merits."  Rather, district courts have "discretion to limit the fairness hearing" to whatever is "consistent with the ultimate goal of determining whether the proposed settlement is fair, adequate and reasonable."  *Tenn. Ass'n of Health Maint. Orgs., Inc.*, 262 F.3d 559, 567 (6th Cir. 2001).  If there are only a small

number of objectors, that fact can be viewed as indicative of the adequacy of the

settlement. *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1079, 1085 (6th

Cir. 1984).  As explained below, the Settlement Agreement meets all Rule 23(e)

criteria.

      **A.**    **The Settlement Agreement Is Fair, Reasonable and Adequate.**

The Sixth Circuit has identified the following seven factors for determining

whether a proposed settlement is "fair, reasonable and adequate":

1.     the risk of fraud or collusion,

2.     the complexity, expense and likely duration of the litigation,

3.     the amount of discovery engaged in by the parties,

4.     the likelihood of success on the merits,

5.     the opinions of class counsel and class representatives,

6.     the reaction of absent class members, and

7.     the public interest.

*UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).  District courts may

"choose to consider only those factors that are relevant to the settlement at hand and

may weigh particular factors according to the demands of the case."  *Cameron v.

Bouchard*, No. 20-10949, 2021 WL 3087986 *3 (E.D. Mich. July 22, 2021) (citations

omitted).  Further, "the acceptance of a settlement in a class action suit is

discretionary with the court and will be overturned only by a showing of abuse of

discretion." *Clark Equip. Co. v. Int'l Union, Allied Indust. Workers*, 803 F.2d 878, 880 (6th Cir. 1986) (citation omitted).  Here, all seven factors weigh in favor of finding the Settlement Agreement fair, reasonable and adequate.

### 1.   There exists no risk of fraud or collusion.

Courts generally presume the absence of fraud or collusion unless there is evidence to the contrary.  *Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) (citation omitted).  There exists no evidence of fraud or collusion here.  The parties negotiated at arms-length before a nationally-known third-party mediator, and the settlement terms were arrived at as a product of extensive negotiations that lasted several months.  Negotiations commenced in October 2021 and were followed by an all-day mediation on November 16, 2021.  Although the parties did not agree to a settlement at the mediation, they held additional sessions with the mediator and continued to negotiate amongst themselves.  More than a month after the initial mediation, in December 2021, the parties reached agreement on the settlement amount, and the parties began to negotiate the remaining terms of the Settlement Agreement.

### 2.   The Settlement Agreement minimizes the complexities, expense, and duration of the litigation.

If approved, the Settlement Agreement will eliminate the possibility of continued protracted litigation (especially if there were a trial on Count II).

### 3.    There was considerable discovery.

During this litigation, the parties served their initial disclosures and experts' disclosures.   DTE's attorneys served Nolan with interrogatories and document requests and deposed her for a full day.   DTE subpoenaed documents from seven other Class members and deposed six of them.

Nolan served Defendants with two sets of interrogatories, two sets of document requests, and one set of requests to admit, and deposed two 30(b)(6) deponents from DTE.   Nolan's counsel reviewed more than 10,0000 pages of documents and information.   The parties exchanged expert witness reports and damages spreadsheets prepared by their actuaries.   Armed with the considerable information they obtained during discovery, the parties agreed to settle this dispute with full knowledge and understanding of the potential risks to all of continued litigation.

### 4.    The likelihood of success was uncertain.

Although Plaintiff feels strongly about her position on the merits, this Court has not ruled on the merits of Counts I or II.   Therefore, at the time of settlement, none of the parties could predict, with any degree of certainty, the outcome of the litigation.   The certainty of most of the Class members receiving 33.5% of the estimated A+B damages clearly outweighs the risk of Nolan and the Class receiving nothing.

### 5. Nolan and her attorneys believe the Settlement is fair, reasonable and adequate.

The $5.5 million settlement amount represents approximately 52% of the $10,612,319 in gross damages for all Class members, and the Class members will receive approximately 33.5% of the gross damages--a high percentage recovery when compared to recoveries in other complex class actions which frequently settle for less than 25 cents on the dollar.[1]  The recovery here is satisfactory for the additional reason that there was no judgment on the merits in favor of the Class, meaning there existed the prospect of a zero dollar recovery, or a recovery less than the settled amount, if their Claims had been litigated to judgment.  These facts provide compelling evidence that the settlement negotiations were conducted at arms' length, and without any fraud or collusion.

---

[1] *See High St. Rehab., LLC v. American Specialty Health* Inc., No. 2:12-cv-07243, 2019 WL 4140784 *33 (E.D. Pa. Aug. 29, 2019) (**ERISA**) (approved $11.75 million settlement fund which represented 11% of estimated damages); *Clark v. Duke Univ.*, No. 1:16-cv-1044, 2019 U.S. Dist. LEXIS 105696 *6, 10-11 (M.D. N.C. June 24, 2019) (**ERISA**) (approved gross settlement fund of $10.65 million where the net after fees and expenses was $5.97 million and estimated damages exceeded $44.8 mllion); *Securities Class Action Settlements: 2016 Review and Analysis* at 8 (Cornerstone Research, 2017; https://www-cdn.law.stanford.edu/wp-content/uploads/2019/01/Settlements-Through-12-2016-Review-1.pdf) (in securities class actions with estimated damages under $50 million median percentage recovery was 7.3%); *In re Pool Prods. Distrib. Mkt. Antitrust Litig*, MDL No. 2328 Section R(2), 2015 WL 452880 *40 (E.D. La. July 27, 2015) (approved $2 million settlement fund for "indirect purchaser plaintiffs," noting it was 8.5% of their "best case projection" for actual damages).

"The judgment of the parties' counsel that the settlement is in the best interest of the settling parties is entitled to significant weight and supports the fairness of the class settlement." *In re Flint Water* Cases, No. 5:16-cv-10444, 2021 WL 5237198 *105 (E.D. Mich. Nov. 10, 2021) (citations omitted).  Nolan's attorneys have been litigating class claims for ERISA pension benefits for 27 years, successfully recovering over $125 million in benefits for participants and their beneficiaries.  *See* Cantarella Affidavit, Ex. 6; Geller Affidavit, Ex. 7; Stamler Affidavit, Ex. 9; and Schram Affidavit, Ex. 8.  However, it goes without saying that neither a judgment for the Class in the trial court, nor the Sixth Circuit's partial reversal of this Court's grant of Defendants' Motion to Dismiss, is a guarantee that the Court of Appeals will affirm the judgment.  The Settlement Agreement should be approved as it is fair, reasonable, and adequate.

### 6.    Absent class members will be given an opportunity to object.

The Settlement Agreement requires DTE to deliver Class Notice to all Class members, which informs them of their right to object, the method of objection, and the time frame for the objection.  Ex. 10 §III; Ex. 11A part 12.  The Settlement Agreement also establishes the timetable for sending the Notice to Class members and the method of delivery.  Ex. 10 §III.  Thus, the Settlement Agreement complies with the procedural safeguards set forth in Rule 23(e) and, in conjunction with the Notice, enables the Court to assess the validity of any Class member objections.

18

### 7.     The Settlement Agreement serves the public interest.

Congress enacted ERISA to ensure that participants (and their beneficiaries) would receive their employer-provided plan benefits.   29 U.S.C. §1001 ("Congressional Findings and Declarations of Policy").   Approving the Settlement Agreement is consistent with this Congressional goal, as it enables the Class members to obtain employer-provided benefits they would not otherwise receive.

Our judicial system also has an interest in the proposed Settlement because this is a complex class action and, thus, consumes scarce judicial resources.  *See UAW*, 497 F.3d at 632 (noting that federal policy favors settlement of class actions); and *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) ("[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.") (citing *Granada*, 962 F.2d at 1205).  Approval of the Settlement Agreement will resolve a difficult and unpredictable complex case and will aid in the conservation of this Court's resources.

Fed. R. Civ. P. 23(e) requirements are met in the proposed Settlement Agreement and it should be preliminarily approved.

**B.     The Manner of Notifying the Class About the Settlement Agreement Is Reasonable.**

The Settlement Agreement provides that the Notice will be sent to Class members via (i) United States mail to their last-known address based on the Plan's and/or DTE's records, and (ii) email to the extent the Plan and/or DTE have an email address on file for the Class member.  Ex. 10 §III.  This is plainly a reasonable manner of providing notice and complies with Rule 23(e)(1).

**C.     The Notice Provides Class Members with the Information Needed to Make an Informed Decision as to Whether the Settlement Agreement Serves Their Interests.**

Rule 23(e) only requires that a class notice "fairly apprise the prospective members of the class of the terms of the proposed settlement" so they may reach their own conclusions as to whether it serves their interests.  *UAW*, 497 F.3d at 630 (citation omitted).  The Class Notice provides Class members with considerable information about the Settlement, including (i) the nature of the dispute, (ii) a brief procedural history of the litigation, (iii) when back benefits will be paid, (iii) the fees and expenses requested by Nolan's attorneys, (iv) the service award sought for Nolan, (v) how and when to object to the Settlement Agreement, and (vi) the date, time and location of the Final Approval hearing.  Ex. 10A.  By providing these and other details, Nolan and counsel for the parties believe most Class members will find that the Settlement Agreement is fair, reasonable and adequate and serves their interests.

## VI.   CONCLUSION AND RELIEF REQUESTED

All prerequisites for certification under Fed. R. Civ. P. 23(a) have been satisfied, and certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A).  Further, the Settlement Agreement is fair, reasonable, and adequate, and the Notice provides the Class members with the information they need to make an informed decision as to whether it serves their interests.

Accordingly, Nolan requests that this Court (i) certify the Settlement Class under Fed. R. Civ. P. 23(b)(1)(A); (ii) appoint her as the representative for the Settlement Class; (iii) appoint her attorneys of record as counsel for the Settlement Class; (iv) preliminarily approve the Settlement Agreement; (v) approve the Notice; and (vi) pursuant to Fed. R. Civ. P. 23(h), set a date for when Nolan's attorneys may file a motion for final approval of the Settlement Agreement and for common-fund fees, expenses and a service award to Nolan as set forth in the proposed Order attached hereto as Exhibit 10C and also submitted to the Court via the Utilities function of the Court's ECM/ECF system.

Respectfully submitted

/s/ Eva T. Cantarella
Eva T. Cantarella (P51917)
Robert P. Geller (P34391)
Patricia A. Stamler (P35905)
Bradley J. Schram (P26337)
Hertz Schram PC
1760 S. Telegraph Rd.
Bloomfield Hills, MI 48302
o. 248-335-5000; f. 248-3353346
ecantarella@hertzschram.com
*Attorneys for Leslie D. Nolan and the putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2022, I served Plaintiff's Unopposed Motion for Certification of Conditional Settlement Class and Preliminary Approval of Settlement Agreement, Brief in Support, Exhibit List, and Exhibits on the following attorneys for Defendants via the Court's CM/ECF system and, in addition, emailed these same attorneys the proposed Order attached as Exhibit 10C to the Settlement Agreement and submitted to the Court via the Court's ECM/ECF Utilities function.

Christopher K. Meyer
Mark D. Blocker
Benjamin I. Friedman
Sidley Austin LLP
One South Dearborn St.
Chicago, Ill. 60603
o. 312-853-0523
cmeyer@sidley.com
mblocker@sidley.com
benjamin.friedman@sidley.com

Paula Johnson-Bacon (P55862)
DTE Energy
One Energy Plaza
Detroit, MI 48226
o. 313-235-7052
paula.bacon@dteenergy.com
*Attorneys for Defendants*

/s/ Eva T. Cantarella
*Lead counsel for plaintiff Leslie D. Nolan*
*and the putative Class*