UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LESLIE D. NOLAN,

               Plaintiff,                               Case Number 18-13359

v.                                            Honorable David M. Lawson

DETROIT EDISON COMPANY, DTE ENERGY
CORPORATE SERVICES, LLC, DTE ENERGY
COMPANY RETIREMENT PLAN, DTE ENERGY
BENEFIT PLAN ADMINISTRATION COMMITTEE,
JANET POSLER, QUALIFIED PLAN APPEALS
COMMITTEE, MICHAEL S. COOPER, RENEE MORAN
and JEROME HOOPER,

               Defendants.

_____/

## OPINION AND ORDER GRANTING UNOPPOSED MOTIONS FOR CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS AND TO APPROVE NOTICE OF CLASS ACTION SETTLEMENT AGREEMENT, SETTING HEARING DATE, AND AUTHORIZING NOTICE TO CLASS MEMBERS

Before the Court is the plaintiff's motion to conditionally certify a settlement class and to preliminarily approve a class settlement agreement, appoint a settlement administrator, authorize notice of a class action settlement, and set a date for a final fairness hearing. The motion is unopposed. The Court heard the parties' arguments on June 29, 2022. No one appeared in opposition. At oral argument, the Court expressed concern over some provisions in the proposed class notice relating to objections by absent class members and requested that the parties submit an amended proposed notice, which they have done. The plaintiff has presented a sufficient basis to certify a settlement class under Federal Rule of Civil Procedure 23(a) & (b)(1)(A) and has shown that the settlement proposal merits approval. Therefore, the Court will conditionally certify the settlement class, grant preliminary approval of the proposed settlement, authorize the amended class notice, and set a date for a final hearing.

I. Background

In 2002, the Detroit Edison Company and its affiliated companies (DTE) implemented a new retirement plan. Before then, DTE offered its employees a traditional defined benefit plan (the Employees' Retirement Plan of the Detroit Edison Company, or "Traditional Plan"), wherein a retired employee would be paid an annuity calculated on a formula based on the employee's salary and years in service. The new plan, known as a "Cash Balance Plan," is a species of defined benefit plan, but also has features of a defined contribution plan. *Register v. PNC Financial Servs. Group, Inc.*, 477 F.3d 56, 62 (3rd Cir. 2007). Under the Cash Balance Plan, the company established a hypothetical retirement account for each employee, which would grow from two sources: annual "contribution credits" (equal to a percentage of the participant's eligible earnings), and "interest credits" (initially linked to the interest rate of government-issued Treasury Bonds).

When DTE made the change, it did not require existing employees who had earned benefits under the old plan to switch to the new plan. Instead, it provided a window during 2002 for those employees to elect to stay with the Traditional Plan or opt in to the new one, thereby allowing them to receive future retirement benefits under one plan or the other, but not both. That choice carried some measure of risk, because no certain prediction could be made that at retirement time an individual employee would do better under the new plan than the old one.

There was a further catch. Existing employees who elected to switch to the new Cash Balance Plan would have their accrued retirement benefits frozen and then receive a hypothetical retirement account balance based on what they had accrued already under the Traditional Plan, projected forward to their retirement date, and then reduced to present value. That established their opening cash balance, against which future accruals would be measured. In one way, that benefited them. It provided a guarantee that no matter how slowly their cash balance account grew

-2-

compared to the opening balance, they would be guaranteed the monthly benefit upon retirement they had earned as of the date the account was frozen, and no less. That "guarantee" was required by Employee Retirement Income Security Act (ERISA). *See* 29 U.S.C. § 1054(g). But their cash balance account would not grow beyond that initial balance until their accumulated credits caught up to that initial balance, "a phenomenon known in pension jargon as 'wear away.'" *Cigna Corp. v. Amara*, 563 U.S. 421, 431 (2011).

Plaintiff Leslie Nolan alleged in a complaint that DTE did not make clear those conditions and limitations when employees were called upon to make an election. Nolan elected to switch to the Cash Balance Plan in the spring of 2002, after she had worked at DTE for just over 23 years. When she went to retire in 2017 after 38 years with the company, she was unpleasantly surprised to learn that her pension benefit had not grown much since her account was frozen in 2002. She believed that she should receive a monthly benefit as calculated under the Traditional Plan *plus* the amount accrued under the Cash Balance Plan since 2002, irrespective of the wear away. The parties refer to that amount as the A+B benefit.

When DTE refused to tender monthly retirement benefits to Nolan under the A+B formula, she sued the defendants on behalf of herself and a putative class of similarly situated DTE employees and retirees under various sections of ERISA, alleging that the defendants breached the terms of the benefits plan, in violation of ERISA § 502(a)(1)(B) (Count 1); failed to state the plan terms in a manner calculated to be understood by the average plan participant, in violation of ERISA § 502(a)(3) (Count 2); and failed to give notice of an amendment to the plan that resulted in a significant reduction of benefits, in violation of ERISA § 204(h) (Count 3).

The Court considered two dispositive motions filed by the defendants. On July 19, 2019, the Court granted the defendants' motion to dismiss and dismissed as moot the defendants' motion

for judgment on the administrative record. *Nolan v. Detroit Edison Company*, 514 F. Supp. 3d 994, 1014 (E.D. Mich. 2019). The plaintiff appealed, and on March 23, 2021 the Sixth Circuit reversed the Court's decision as to Counts 1 and 2 and affirmed the dismissal as to Count 3. *Nolan v. Detroit Edison Co.*, 991 F.3d 697 (6th Cir. 2021). The defendants renewed their motion for judgment on the administrative record, and the Court heard oral argument on November 30, 2021. Before the Court could rule on the motion, however, the parties informed the Court that they had agreed to a settlement in principle after engaging in facilitative mediation. On January 4, 2022, the parties stipulated to stay the case, and about three month later they notified the Court that they had reached a settlement, subject to court approval.

## II. Conditional Certification

On March 28, 2022, the plaintiff filed the present unopposed motions to conditionally certify the settlement class and appoint class counsel and for preliminary approval of the class action settlement. They propose a settlement class defined as:

> All DTE employees who, in 2002, elected to transfer from the DTE Traditional Plan to the DTE Cash Balance Plan (as those terms are defined in the DTE Energy Company Retirement Plan attached as Exhibit 1 to the Complaint), and the beneficiaries of any deceased such DTE employees.

The parties represent that there are 466 individuals who made the transfer to the Cash Balance Plan during the four-month window of opportunity.

"The class action is a creature of the Federal Rules of Civil Procedure." *United States v. Sanchez-Gomez*, --- U.S. ---, 138 S. Ct. 1532, 1538 (2018). "It is an 'exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only,' and 'provides a procedure by which the court may exercise . . . jurisdiction over the various individual claims in a single proceeding.'" *Ibid.* (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). "The

certification of a suit as a class action has important consequences for the unnamed members of the class." *Ibid*. (*Sosna v. Iowa*, 419 U.S. 393, 399 n.8 (1975)).

"Any class certification must satisfy Rule 23(a)'s requirement of numerosity, commonality, typicality, and adequate representation." *Clemons v. Norton Healthcare Inc. Retirement Plan*, 890 F.3d 254, 278 (6th Cir. 2018). "Further, a class action must fit under at least one of the categories identified in Rule 23(b)." *Ibid*. "The district court must conduct 'a rigorous analysis' as to all the requirements of Rule 23." *Id*. at 278-79 (quoting *Pipefitters Local 636 Insurance Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 630 (6th Cir. 2011)). "[T]he party seeking class certification . . . bears the burden of 'affirmatively demonstrat[ing]' compliance with Rule 23." *Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc*., 863 F.3d 460, 466-67 (6th Cir. 2017) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

The plaintiff adequately has established that this litigation warrants certification as a class action under Rule 23(a).

*First*, the proposed class comprising approximately 466 current and former DTE employees meets the requirement of being so numerous that joinder of all those persons as individual plaintiffs would be impracticable. Although the numerosity requirement "'requires examination of the specific facts of each case and imposes no absolute limitations,' . . . [w]hen class size reaches substantial proportions . . . the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys., Inc*., 75 F.3d 1069, 1079 (6th Cir. 1996) (quoting *General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980)). The plaintiff has established "that there are *in fact* sufficiently numerous parties" to make joinder impractical in this case. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original); *see also Young v.*

*Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012) (noting that a class of 69 members would be sufficient to meet the numerosity requirement).

*Second*, there are prominent common questions of law and fact affecting all of the class members that are pertinent to the defendants' liability.  The core question in this case is whether the DTE Retirement Plan — or the Retirement Choice Decision Guide that the defendants provided to certain DTE employees— promised an "A+B Benefit" to participants who, in 2002, elected to move from the Traditional Pension Plan to the Cash Balance Plan.  This question is "capable of classwide resolution" because deciding it will determine the "validity of each one of the claims in one stroke."  *Ibid.* (quoting *Dukes*, 131 S. Ct. at 2551 n.5).  The class plaintiffs are governed by the same retirement plan, the proper interpretation of which is at issue.  As a general matter, the interpretation of ERISA benefit plans raises common questions suitable for class consideration.  *Bittinger v. Tecumseh Prod. Co*., 123 F.3d 877, 884 (6th Cir. 1997); *Forbush v. J.C. Penney Co*., 994 F.2d 1101, 1106 (5th Cir. 1993); *cf. Sprague v. Gen. Motors Corp*., 133 F.3d 388, 397 (6th Cir. 1998) (finding no commonality where these common questions already had been decided).  And the jury here would interpret the language of the Retirement Plan and Guide without regard to any actual perception or individualized proofs by any of the plaintiff class members.  The common central issue of plan interpretation therefore would govern the defendants' liability on all of the ERISA claims.

*Third*, because the plaintiff's claims and defenses principally would concern the propriety of the defendants' systematic actions and application of their policies, they are sufficiently typical of all class members to be addressed in common.  The plaintiff has framed her challenge in terms of the defendants' general practice of calculating retirement benefits.  *See Forbush*, 994 F.2d at 1106 (finding a plaintiff's claims typical of the class because her challenge was framed "in terms

-6-

of [the defendant's] general practice of overestimating social security benefits."). Either all of the plaintiffs are entitled to relief or none of them are, universally based on the same legal theory. For the same reasons, the common questions in this case entirely predominate over any individualized issues. The only issues that would implicate the individual circumstances of class members are the subsequent determinations of individual awards, which do not supply a basis for concluding that the plaintiff has not met the commonality requirement. *Ibid.*; *see also Bittinger*, 123 F.3d at 884 ("Though the level of claimed injury may vary throughout the class — a common feature of class actions routinely dealt with at a remedial phase — the basic injury asserted is the same" wrongful denial of ERISA benefits.).

*Finally*, the named individual plaintiff and class representative adequately is positioned to represent the class, and her interests sufficiently are aligned with them, since Nolan's interest are identical to those of the other class members who are also seeking to enforce the "A+B" benefit. No conflicts of interest are apparent, and the plaintiff does not seek any preferential treatment, except for a banner award, which is discussed below. *Cf. Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-27 (1997) (distinguishing cases where named plaintiffs' interests conflict with those of other class members); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013) (finding named plaintiffs inadequate where they had incentives to compromise the interest of the class for personal gain). Moreover, the plaintiff actively has been engaged in this litigation and is represented by qualified and zealous ERISA attorneys with ample experience litigating class-action suits. Other district courts have found plaintiff's counsel to be experienced and capable. *See Humphrey v. United Way*, No. 05-0758, 2007 WL 2330933, at *7 (S.D. Tex. Aug. 14, 2007) (collecting cases). The record demonstrates that plaintiff's counsel are committed to prosecuting

the class members' claims until there is a final, non-appealable resolution of the dispute in the present case.

The parties also adequately have established that class certification is appropriate under Rule 23(b)(1)(A).  Because "ERISA administrators may not discriminate between similarly situated beneficiaries, . . . individual actions by multiple retirees would clearly have created a risk of 'inconsistent or varying adjudications' that 'would establish incompatible standards of conduct'" for the defendants. *Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 280 (6th Cir. 2018) (quoting Fed. R. Civ. P. 23(b)(1)(A)).  Certification under Rule 23(b)(1)(A) thus is appropriate to avoid inconsistent adjudications with regard to the interpretation of the DTE Retirement Plan that would establish incompatible standards of conduct for the defendants. *Ibid.*

Because the plaintiff has fulfilled the requirements of Rule 23(a) and (b), the Court will conditionally recertify the settlement class, appoint Leslie Nolan as the class representative, and appoint her attorneys Eva T. Canterella, Robert P. Geller, and Patricia A. Stamler as class counsel.

### III.  Preliminary Approval of Proposed Settlement Agreement

Federal Rule of Civil Procedure 23(e) imposes certain "rules for the settlement, dismissal, or compromise of class claims." *Whitlock v. FSL Management, LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016).  "It requires that class-action claims 'may be settled, voluntarily dismissed, or compromised only with the court's approval.'" *Ibid.* (quoting Fed. R. Civ. P. 23(e)).  The approval of a proposed settlement ordinarily involves a two-stage procedure.  "First, counsel submit the proposed terms of [the] settlement and the judge makes a preliminary fairness evaluation. . . .  Once the judge is satisfied as to the . . . results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class

members."  Manual for Complex Litigation (4th ed.) §§ 21.632-.633 (2004); *see also Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001).

"Approval is only warranted where the court determines, *inter alia*, that the proposed class settlement would be 'fair, reasonable, and adequate.'"  *Whitlock*, 843 F.3d at 1093.  "Factors that guide this inquiry include: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest."  *Ibid.* (quoting *UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007)).

The terms of the proposed settlement agreement are set out in an exhibit to the motion, ECF No. 75-11, PageID.3482-3516.  Under that agreement, the defendants agree to pay $5.5 million into a settlement fund for the benefit of the class.  After deducting the amount plaintiff's counsel intends to seek for attorney's fees and expenses and independent fiduciary fees, and the requested service award for the plaintiff, the Net Settlement Amount will be $3,563,394.59.  *Id.* at PageID.3495.  The plaintiff and class agree to release all asserted and potential claims arising from the allegations in the complaint.  *Id.* at PageID.3510-11.

Under the plaintiff's proposed plan of allocation, 435 of the 466 class members will receive 33.5 percent of their A+B damages, while the remaining 31 class members, who either were not vested or had nominal or no A+B damages, will receive small amounts (between $50 and $100) totaling $3,750.  *See* Allocation Plan, ECF No. 75-13, PageID.3530-48.  Participants who took a lump sum benefit or whose benefit type is unknown will receive their portion of the settlement in a lump sum.  Participants who received an annuity will receive a portion of their settlement proceeds as a lump sum and a portion as an increase to their monthly annuity.

The named plaintiff's banner (service) award will be no more than $15,000, paid from the settlement fund.  The defendants will bear the entire administrative costs associated with modification of the retirement plans as needed, notice to the absent class members, and the allocation and distribution of the settlement funds.

Class counsel will seek attorney's fees of no more than $1,833,333.33, or 33.3% of the gross settlement fund, and cost reimbursement of no more than $73,272.08, all subject to court approval.

The plaintiff also has established that the proposed settlement is adequate, reasonable, and fair to the class.

*First*, the risk of fraud and collusion is low.  The parties have litigated the merits of the claims over more than three years, through two rounds of vigorously contested dispositive motions and an appeal to the Sixth Circuit.  Both sides sought and secured some victories in those battles. The parties also engaged in a mediation presided over by an experienced professional mediator. Although the mediation initially was not successful, the parties continued to engage in settlement negotiations over the ensuing month.  *See* Stip. to Stay, ECF No. 71, PageID.3181.  They ultimately achieved consensus on a settlement agreement that addresses the claims and defenses of all parties.  The proposed banner award to the named plaintiff is reasonable and based on her extensive participation in the litigation; it does not represent a windfall to the plaintiff at her fellow class members' expense.

*Second*, the litigation is complex, and the expense and duration already has been substantial, and would grow more so if the case proceeded to trial.  Although the defendants had moved for judgment on the administrative record as to Count 1 of the plaintiff's complaint, the

parties appear prepared to proceed to trial on Count 2 regardless of the Court's decision on that motion.  If the settlement agreement is not approved, protracted litigation is likely.

*Third,* the parties have engaged in considerable formal discovery throughout the pendency of this litigation to explore the basis of the plaintiff's claims.  The parties served each other with interrogatories and document requests and exchanged expert witness reports and damage estimates prepared by their actuaries.  *See* Mot. to Approve Settlement, ECF No. 75, PageID.3214.  They each took depositions, with the defendants deposing the plaintiff and six other class members, and the plaintiffs taking two depositions of DTE employees.  *Ibid.*  Plaintiff's counsel also has reviewed more than 10,000 pages of documents.  *Ibid.*  The parties are armed with considerable information for evaluating their claims and settling this dispute.

*Fourth*, the plaintiff's prospects for success on the merits are uncertain.  The Sixth Circuit partially reversed the Court's dismissal of her complaint.  *See Nolan.*, 991 F.3d at 716.  However, the defendants forcefully had argued that one of her two remaining claims should be dismissed, with judgment granted on the administrative record.  The core questions in the case turn on an assessment by a factfinder of the proper interpretation of the DTE Retirement Plan and plan documents, and whether those documents were written in a manner calculated to be understood by the average plan participant.  A jury readily could agree with either party's interpretation of the Retirement Plan, and resolution of the question whether the relevant summary documents were misleading or failed to inform participants of the impact of transferring from the Traditional Pension Plan to the Cash Balance Plan is not obvious.  The certainty of most class members receiving a third of their estimated A+B benefit outweighs the risk of their receiving nothing if the matter were to proceed to trial.  Moreover, the $5.5 million settlement represents more than half of the $10,612,319 in gross damages for all Class members, a high-percentage recovery in ERISA

litigation. *See, e.g.*, *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, No. 10-4360, 2019 WL 4746744, at *5 (E.D. Mich. Sept. 30, 2019) (Hood, J.) (approving recovery of 25% of claimed damages), *aff'd*, 833 F. App'x 430 (6th Cir. 2021); *High St. Rehab. v. American Specialty Health Inc.*, No. 12-07243, 2019 WL 4140784, at *12 (E.D. Pa. Aug. 29, 2019) (approving recovery of 11% of claimed damages); *Rankin v. Rots*, No. 02-71045, 2006 WL 1876538, at *4 (E.D. Mich. June 27, 2006) (Cohn, J.) (approving recovery of 18% to 46% of claimed damages).

*Fifth*, class counsel and the named plaintiff who actively participated in the litigation and mediation express their strong endorsements of the settlement.

*Sixth*, the views of absent class members are not yet known, but the notice period will provide ample opportunity for them to weigh in or object.

*Finally*, the public interest favors resolution of the matter by way of a settlement that will secure a substantial recovery for the class members while avoiding the wastage of considerable time and expense by the parties and the Court, possibly only to reach the same end. *See UAW*, 497 F.3d at 632 (noting that federal policy favors settlement of class actions); *Whitlock*, 843 F.3d at 1094 (same). Approval of the settlement agreement also is consistent with Congress's intent in enacting ERISA to ensure that plan participants receive their employer-provided benefits. *See* 29 U.S.C. §1001(a).

Also, the incentive award to the named plaintiff is half of what previously was proposed, mitigating any lingering concern that the plaintiff will enjoy a windfall at her fellow class members' expense.

## IV. Notice

"Due process requires the class notice to be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections.'" *Pelzer v. Vassalle*, 655 F. App'x 352, 368 (6th Cir. 2016) (quoting *UAW*, 497 F.3d at 629). The notice must "'fairly apprise the prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests." *UAW*, 497 F.3d at 630 (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975)).

The parties propose that the defendants will send a class notice document to class members via U.S. Mail at their last-known address and via email to their last-known email address. Settlement Agreement, ECF No. 75-11, PageID.3492; *see also* Revised Class Notice, ECF No. 78-1, PageID.3565. If necessary, the defendant will use commercially-reasonable means to find class members' current address and re-send the notice document. The notice contains a brief description of the claims advanced in this lawsuit, a summary of the terms of the settlement agreement, a description of the plan of allocation, and information about the final approval hearing, among other things. Pursuant to the class notice and settlement agreement, any class member who wishes to object to the settlement or class action must submit a written statement of objection to the Court no later than 28 days before the final approval hearing. Settlement Agreement, ECF No. 75-11, PageID.3493-94. The parties agreed to modify the format for objections and filed an amended form of objection after the hearing. *See* EFC No. 81, 82.

The form of notice attached to the proposed settlement agreement provides a description of this lawsuit, a summary of the proposed settlement agreement, and directions on when and how to file written objections with the Court. Revised Class Notice, ECF No. 78-1, PageID.3567-72. This method is reasonably calculated to provide notice of the class action and afford class members an opportunity to present objections, in compliance with Rule 23(e)(1). *See UAW*, 497 F.3d at 629-30 (upholding a notice that discussed the nature of the pending suit and summarized the

-13-

settlement agreement); *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) (upholding a notice that described the terms of the settlement, the reasons for class representatives' decision to settle, the legal effect of the settlement and the rights of the class members to voice their objections).

The plan for notifying absent class members proposed by the parties is reasonable.  The notice is reasonably clear and otherwise conforms to the requirements of Rule 23(c)(2)(A) and 23(e).  The proposed notice must be amended, however, to include the deadlines prescribed by this order.

## V.  Conclusion

Accordingly, it is **ORDERED** that the plaintiff's unopposed motion and amended motion to certify a settlement class and for preliminary approval of the proposed settlement agreement and procedure for providing class notice (ECF No. 75, 81) are **GRANTED**.   The proposed settlement agreement is **PRELIMINARILY APPROVED**, subject to objections by absent class members and except for the determination of the attorney's fees and costs.

It is further **ORDERED** that, pursuant to Federal Rule of Civil Procedure 23(b)(1), the following settlement class is conditionally certified in this case:

> All DTE employees who, in 2002, elected to transfer from the DTE Traditional Plan to the DTE Cash Balance Plan (as those terms are defined in the DTE Energy Company Retirement Plan attached as Exhibit 1 to the Complaint), and the beneficiaries of any deceased such DTE employees.

It is further **ORDERED** that counsel of record for the named plaintiff, namely attorneys Eva T. Canterella, Robert P. Geller, and Patricia A. Stamler, are appointed as counsel for the designated settlement class.  Plaintiff Leslie Nolan is appointed as the class representative.

It is further **ORDERED** that **on or before July 15, 2022**, the defendants shall provide notice of this proposed class settlement to the appropriate state and federal authorities.  The defendants must file proof that it has provided the required notice with the Court, in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715(b).

It is further **ORDERED** that plaintiff's counsel or their designated representative shall cause notice of the proposed settlement to be given to class members in the following manner:

> (a) **On or before August 19, 2022**, a copy of the Notice of Class Action Settlement Agreement, substantially in the form attached as ECF No. 78-1, Page.ID 3565-3575, as modified by ECF No. 82, PageID.3582, must be mailed by first-class mail, with postage prepaid, to each class member's last-known address and via email to their last-known email address.  If necessary to provide actual notice, the defendant must use commercially-reasonable means to find class members' current address and re-send the notice document.

> (b)  The notice to class members must explain that objections to, and requests to be excluded from, the class settlement must be filed with the Court and the parties' counsel **on or before September 27, 2022**.

It is further **ORDERED** that plaintiff's counsel shall file proof of mailing of the class notice in conformity with this order **on or before August 26, 2022**.

It is further **ORDERED** that the expenses of printing and mailing and publishing all notices required hereby shall be paid by the defendants.

It is further **ORDERED** that, **on or before October 4, 2022**, plaintiff's counsel must file a motion for final approval of the settlement identifying absent class members who object.  The defendant's response, if the motion is opposed, must be filed **on or before October 18, 2022.**  No reply will be permitted without leave of Court.

It is further **ORDERED** that a hearing shall be held at **1:30 p.m.** on **Tuesday, October 25, 2022** in Room 767 of the Theodore Levin United States Courthouse, 231 West Lafayette Blvd., Detroit, Michigan 48226, to consider any objections to the settlement agreement and to determine

whether the settlement agreement should be finally approved as having been negotiated in good faith and as being fair, reasonable, and in the best interest of the class members.

It is further **ORDERED** that any class member may appear at the settlement hearing and be heard to the extent allowed by this Court, either in support of or in opposition to the good faith, fairness, reasonableness, and adequacy of the proposed settlement or the plaintiff's counsel's application for an award of attorney's fees, reimbursement of expenses, and an incentive award to the representative plaintiff.  However, no class member shall be entitled to be heard or entitled to contest the approval of the terms and conditions of the proposed settlement or the judgment to be entered pursuant thereto approving the same, or the plaintiff's counsel's fee, expense and incentive award application, unless, **on or before October 11, 2022**, such person: (a) has filed with the Clerk of Court a notice of such person's intention to appear, together with a statement that indicates the basis for such opposition, and (b) has served copies of such notice and statement, together with copies of any papers that such person has filed with the Clerk of the Court and each parties' counsel at the following addresses:

> Clerk of the Court
> United States District Court
> 231 Lafayette Boulevard
> Detroit, MI 48226
> Re: Leslie Nolan v. Detroit Edison Company, *et al.*
> Case Number 18-13359
>
> *Counsel for the Plaintiff*
>
> Eva T. Cantarella
> Robert P. Geller
> Patricia A. Stamler
> Hertz Schram PC
> 1760 S. Telegraph Rd.
> Bloomfield Hills, Michigan 48302
> 248-335-5000
> ecantarella@hertzschram.com

-16-

rgeller@hertzschram.com
pstamler@hertzschram.com

*Counsel for the Defendant*

Christopher K. Meyer
Mark D. Blocker
Benjamin I. Friedman
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
312-853-0523
cmeyer@sidley.com
mblocker@sidley.com
benjamin.friedman@sidley.com

Paula Johnson-Bacon
DTE Energy
One Energy Plaza Detroit, Michigan 48226
313-235-7052
paula.bacon@dteenergy.com

Any class member who does not serve and file an objection to the proposed settlement of the litigation or the fee, expense and incentive award application, in the manner provided for herein, shall be deemed to have waived the right to object, including the right to appeal, and shall be forever foreclosed from making any objection to the settlement, the fee, expense and incentive award application, or to any order or judgment filed or entered thereon, as applicable.  Counsel for the plaintiff must notify all absent class members of this requirement.

It is further **ORDERED** that applications for incentive awards, attorney's fees, or reimbursable expenses under Rule 23(h) must be filed **on or before September 6, 2022**.  Counsel must provide notice to class members in accordance with Fed. R. Civ. P. 23(h)(1).

It is further **ORDERED** that class counsel shall be responsible for maintaining a file of all responses to the notice of settlement and any and all other written communications received from

-17-

the class members.   Class counsel immediately shall provide copies of such responses and communications to defendants' counsel.

It is further **ORDERED** that the Court reserves the right to adjourn the settlement hearing from time to time without further notice and to approve the settlement agreement at or after the settlement hearing.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  July 5, 2022

-18-