UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LESLIE D. NOLAN,

        Plaintiff,

v.

DETROIT EDISON COMPANY, DTE ENERGY
CORPORATE SERVICES, LLC, DTE ENERGY
COMPANY RETIREMENT PLAN, DTE ENERGY
BENEFIT PLAN ADMINISTRATION COMMITTEE,
JANET POSLER, QUALIFIED PLAN APPEALS
COMMITTEE, MICHAEL S. COOPER, RENEE MORAN
and JEROME HOOPER,

        Defendants.

Case Number 18-13359
Honorable David M. Lawson

_____/

## ORDER GRANTING JOINT MOTION FOR FINAL
## APPROVAL OF CLASS SETTLEMENT AND DISMISSING CASE

The Court conducted a fairness hearing on October 25, 2022 to determine whether a

settlement agreement should be given final approval on behalf of the certified settlement class in

this case.  The Federal Rules of Civil Procedure require court approval of settlements in class

actions, Fed. R. Civ. P. 23(e)(2), and if the settlement would determine the rights of and bind

absent class members, "the court may approve it only after a hearing and only on finding that it is

fair, reasonable, and adequate." *Ibid*.  The October 25 hearing was the second step in the settlement

approval process.  *See* Manual for Complex Litigation § 23.632-.633 (4th ed.); *see also Tennessee*

*Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565 (6th Cir. 2001).  On July 5, 2022,

the Court granted preliminary approval of the settlement agreement under Federal Rule of Civil

Procedure 23(e) as the first step in the process.  The Court directed that written notice to the class

be given by August 19, 2022 via first-class mail augmented by other media, including email.  The

defendants retained Analytics Consulting LLC as the agent to give notice to the class in the manner

approved by the Court, and ultimately to administer the settlement, process claims, and make

distributions.  Notice to the absent class members was given in the manner ordered by the Court.

The notice summarized the proposed settlement, the manner of distribution, the attorney's fees to

be requested by class counsel, and the banner (service) award to be requested by the named

plaintiff.  No objections have been received by the Court or the parties.  The Court is satisfied that

the settlement is fair, adequate, and reasonable, the attorney's fee, cost reimbursement, and banner

award requests (as modified) are reasonable, and the settlement is in the best interest of the class

as a whole.  The motion for final approval of the class settlement will be granted.

## I.  The Plaintiff Class

The background facts of the case are discussed at length in the Court's order granting

preliminary approval to the class settlement.  *See* ECF No. 83, PageID.3584-86.  The proposed

settlement agreement addresses the plaintiff's claims under the Employee Retirement Income

Security Act (ERISA) alleging that the defendants breached the terms of the Detroit Edison

Company (DTE) Retirement Plan and failed to state plan terms in a manner calculated to be

understood by the average plan participant.

The claims arose from DTE's decision to implement a new Cash Balance Retirement Plan

in 2002.  At that time, DTE permitted employees to elect to remain in its Traditional Defined

Benefit Retirement Plan or opt into the new Cash Balance Plan.  Employees who elected to switch

to the Cash Balance Plan would have their accrued retirement benefits frozen and then receive a

hypothetical retirement account balance based on what they had accrued already under the

Traditional Plan, projected forward to their retirement date, and then reduced to present value.

That established their opening cash balance, against which future accruals would be measured.

However, their Cash Balance account would not grow beyond that initial balance until employees' accumulated credits caught up to it, a phenomenon known as "wear away."

Plaintiff Leslie Nolan alleged in a complaint that DTE did not make those conditions and limitations clear when employees were called upon to make an election in 2002. Having made the election, she believed that she should receive a monthly benefit as calculated under the Traditional Plan *plus* the amount accrued under the Cash Balance Plan since 2002, irrespective of the wear away. The parties refer to that amount as the A+B benefit.

The Court previously conditionally certified the following class in an order granting the plaintiff's motion for preliminary approval of the proposed settlement agreement:

> All DTE employees who, in 2002, elected to transfer from the DTE Traditional Plan to the DTE Cash Balance Plan (as those terms are defined in the DTE Energy Company Retirement Plan attached as Exhibit 1 to the Complaint), and the beneficiaries of any deceased such DTE employees.

Am. Order Granting Prelim. Approval of Class Settlement, ECF No. 85, PageID.3618.

## II. The Proposed Settlement

Under the proposed settlement, the defendants agree to pay $5.5 million to a common fund for payment of claims, attorney fees, and expenses. The agreement calls for payments from the fund to be allocated as follows. First, to pay out awards of attorney's fees and costs as approved by the Court; second, to cover the costs of administration, which amount to a $15,000 payment to Newport Group, an independent fiduciary that evaluated the settlement, and a $15,000 banner (service) award payment to named plaintiff Leslie Nolan; and finally, to pay to each class member under the proposed plan of allocation. Under that plan, 435 of the 466 class members will receive 33.5% of their A+B damages, while the remaining 31 class members, who either were not vested or had nominal or no A+B damages, will receive small amounts between $50 and $100 each. *See* Allocation Plan, ECF No. 75-13, PageID.3530-48.

The defendants will be responsible for all expenses of administering the settlement and will ensure that prompt distributions are made.

### III.  The Class Notice

The parties certified that by August 26, 2022, the defendants caused notice to be sent to all class members.  They engaged Analytics Consulting to provide notice to class members.  Analytics Consulting sent notices to all 466 class members by first-class mail and email on August 19, 2022. The notice contains a brief description of the claims advanced in this lawsuit, a summary of the terms of the settlement agreement, a description of the plan of allocation, and information about the final approval hearing, among other things.  Under the schedule set by the Court, the period for filing objections ran from August 19, 2022 to September 27, 2022.

Some class notices were returned undelivered, so Analytics Consulting re-mailed the notice to forwarding addresses that were provided and performed a skip trace in an attempt to ascertain a valid address for the affected class members.  Analytics Consulting represents that it was able to obtain 17 new addresses through that process and that only 3.6% of notices (representing 17 individuals) ultimately were undeliverable.

No class members filed objections to the settlement as of the September 27, 2022 deadline.

### IV.  Approval of the Class Settlement

Federal Rule of Civil Procedure 23(e) imposes certain "rules for the settlement, dismissal, or compromise of class claims."  *Whitlock v. FSL Management, LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016).  "It requires that class-action claims 'may be settled, voluntarily dismissed, or compromised only with the court's approval.'"  *Ibid.* (quoting Fed. R. Civ. P. 23(e)).  "Approval is only warranted where the court determines, inter alia, that the proposed class settlement would be 'fair, reasonable, and adequate.'"  *Ibid.*  "Factors that guide [the assessment by the Court of a proposed class settlement] include: (1) the risk of fraud or collusion; (2) the complexity, expense

and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Ibid.* (quoting *UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007)).

### A.  The Settlement

The plaintiff has established that the proposed settlement is adequate, reasonable, and fair to the class.

As an initial matter, it appears that absent class members will receive nearly 65% of the settlement fund proceeds, and that vested class members could receive individual payments ranging from $100.00 to $69,207.17.  Every vested class member will receive a recovery equivalent to at least 33.5% of their A+B benefit, which constitutes the major share of the settlement fund.  And the gross settlement amounts to more than half of the class's total claimed damages.  The proposed settlement also satisfies all seven factors the Court must consider in determining the fairness, reasonableness, and adequacy of the agreement.  *See Whitlock*, 843 F.3d at 1093.

*First*, the risk of fraud and collusion is low.  The parties have litigated the merits of the claims over more than three years, through two rounds of vigorously contested dispositive motions and an appeal to the Sixth Circuit.  Both sides sought and secured some victories in those battles. The parties also engaged in a mediation presided over by an experienced professional mediator. Although the mediation initially was not successful, the parties continued to engage in settlement negotiations over the ensuing month.  *See* Stip. to Stay, ECF No. 71, PageID.3181.  They ultimately achieved consensus on a settlement agreement that addresses the claims and defenses of all parties.  The proposed banner award to the named plaintiff is reasonable and based on her

extensive participation in the litigation; it does not represent a windfall to the plaintiff at her fellow class members' expense.

*Second*, the litigation is complex, and the expense and duration already has been substantial, and would grow more so if the case proceeded to trial. Although the defendants had moved for judgment on the administrative record as to Count 1 of the plaintiff's complaint, the parties appear prepared to proceed to trial on Count 2 regardless of the Court's decision on that motion. If the settlement agreement is not approved, protracted litigation is likely.

*Third,* the parties have engaged in considerable formal discovery throughout the pendency of this litigation to explore the basis of the plaintiff's claims. The parties served each other with interrogatories and document requests and exchanged expert witness reports and damage estimates prepared by their actuaries. *See* Mot. to Approve Settlement, ECF No. 75, PageID.3214. They each took depositions, with the defendants deposing the plaintiff and six other class members, and the plaintiff taking two depositions of DTE employees. *Ibid.* Plaintiff's counsel also has reviewed more than 10,000 pages of documents. *Ibid.* The parties are armed with considerable information for evaluating their claims and settling this dispute.

*Fourth*, the plaintiff's prospects for success on the merits are uncertain. The Sixth Circuit partially reversed the Court's dismissal of her complaint. *See Nolan v. Detroit Edison Co.*, 991 F.3d 697, 716 (6th Cir. 2021). However, the defendants forcefully had argued that one of her two remaining claims should be dismissed, with judgment granted on the administrative record. The core questions in the case turn on an assessment by a factfinder of the proper interpretation of the DTE Retirement Plan and plan documents, and whether those documents were written in a manner calculated to be understood by the average plan participant. A jury readily could agree with either party's interpretation of the Retirement Plan, and resolution of the question whether the relevant

summary documents were misleading or failed to inform participants of the impact of transferring from the Traditional Pension Plan to the Cash Balance Plan is not obvious.  The certainty of most class members receiving a third of their estimated A+B benefit outweighs the risk of their receiving nothing if the matter were to proceed to trial.  Moreover, the $5.5 million settlement represents more than half of the $10,612,319 in gross damages for all Class members, a high-percentage recovery in ERISA litigation.  *See, e.g.*, *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, No. 10-4360, 2019 WL 4746744, at *5 (E.D. Mich. Sept. 30, 2019) (Hood, J.) (approving recovery of 25% of claimed damages), *aff'd*, 833 F. App'x 430 (6th Cir. 2021); *High St. Rehab. v. American Specialty Health Inc.*, No. 12-07243, 2019 WL 4140784, at *12 (E.D. Pa. Aug. 29, 2019) (approving recovery of 11% of claimed damages); *Rankin v. Rots*, No. 02-71045, 2006 WL 1876538, at *4 (E.D. Mich. June 27, 2006) (Cohn, J.) (approving recovery of 18% to 46% of claimed damages).

*Fifth*, class counsel and the named plaintiff who actively participated in the litigation and mediation express their strong endorsements of the settlement.

*Sixth*, none of the absent class members who received notice filed objections to the settlement.

*Seventh*, the public interest favors resolution of the matter by way of a settlement that will secure a substantial recovery for the class members while avoiding the wastage of considerable time and expense by the parties and the Court, possibly only to reach the same end.  *See UAW*, 497 F.3d at 632 (noting that federal policy favors settlement of class actions); *Whitlock*, 843 F.3d at 1094 (same).  Approval of the settlement agreement also is consistent with Congress's intent in enacting ERISA to ensure that plan participants receive their employer-provided benefits.  *See* 29 U.S.C. §1001(a).

Named plaintiff Leslie Nolan submitted an affidavit attesting to the many hours she spent participating in this litigation including exhausting the Plan's administrative procedures, answering written discovery, appearing for a deposition, reviewing all principal Court filings, and attending the hearing on the motion for class certification and preliminary approval of the settlement agreement.  She adequately has demonstrated that her requested incentive payment of $15,000 is "not in fact a bounty," *see Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 311 (6th Cir. 2016), but instead represents just compensation for time and effort spent on bringing this action to a successful conclusion.  The incentive award may be paid as expenses of administration.

### B.  Class Certification

As noted in the order preliminarily approving the settlement class, "[a]ny class certification must satisfy Rule 23(a)'s requirement of numerosity, commonality, typicality, and adequate representation."  *Clemons v. Norton Healthcare Inc. Retirement Plan*, 890 F.3d 254, 278 (6th Cir. 2018).  "Further, a class action must fit under at least one of the categories identified in Rule 23(b)."  *Ibid.*

"The district court must conduct 'a rigorous analysis' as to all the requirements of Rule 23."  *Id.* at 278-79 (quoting *Pipefitters Local 636 Insurance Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 630 (6th Cir. 2011)).  That "rigorous analysis" was performed when the Court conditionally certified the settlement class.  The evidence presented by the plaintiff in her motion for final settlement approval fortifies the previous findings.

*First*, the proposed class comprising approximately 466 current and former DTE employees meets the requirement of being so numerous that joinder of all those persons as individual plaintiffs would be impracticable.  Although the numerosity requirement "'requires

examination of the specific facts of each case and imposes no absolute limitations,' . . . [w]hen class size reaches substantial proportions . . . the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys., Inc*., 75 F.3d 1069, 1079 (6th Cir. 1996) (quoting *General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980)).  The plaintiff has established "that there are *in fact* sufficiently numerous parties" to make joinder impractical in this case.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original); *see also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012) (noting that a class of 69 members would be sufficient to meet the numerosity requirement).

*Second*, there are prominent common questions of law and fact affecting all of the class members that are pertinent to the defendants' liability.  The core question in this case is whether the DTE Retirement Plan — or the Retirement Choice Decision Guide that the defendants provided to certain DTE employees — promised an "A+B Benefit" to participants who, in 2002, elected to move from the Traditional Pension Plan to the Cash Balance Plan.  This question is "capable of classwide resolution" because deciding it will determine the "validity of each one of the claims in one stroke." *Ibid.* (quoting *Dukes*, 564 U.S. at 350).  The class plaintiffs are governed by the same retirement plan, the proper interpretation of which is at issue.  As a general matter, the interpretation of ERISA benefit plans raises common questions suitable for class consideration. *Bittinger v. Tecumseh Prod. Co*., 123 F.3d 877, 884 (6th Cir. 1997); *Forbush v. J.C. Penney Co*., 994 F.2d 1101, 1106 (5th Cir. 1993); *cf. Sprague v. Gen. Motors Corp*., 133 F.3d 388, 397 (6th Cir. 1998) (finding no commonality where these common questions already had been decided). And the jury here would interpret the language of the Retirement Plan and Guide without regard to any actual perception or individualized proofs by any of the plaintiff class members.  The

common central issue of plan interpretation therefore would govern the defendants' liability on all of the ERISA claims.

*Third*, because the plaintiff's claims and defenses principally would concern the propriety of the defendants' systematic actions and application of their policies, they are sufficiently typical of all class members to be addressed in common.  The plaintiff has framed her challenge in terms of the defendants' general practice of calculating retirement benefits.  *See Forbush*, 994 F.2d at 1106 (finding a plaintiff's claims typical of the class because her challenge was framed "in terms of [the defendant's] general practice of overestimating social security benefits.").  Either all of the plaintiffs are entitled to relief or none of them are, universally based on the same legal theory.  For the same reasons, the common questions in this case entirely predominate over any individualized issues.  The only issues that would implicate the individual circumstances of class members are the subsequent determinations of individual awards, which do not supply a basis for concluding that the plaintiff has not met the commonality requirement.  *Ibid.*; *see also Bittinger*, 123 F.3d at 884 ("Though the level of claimed injury may vary throughout the class — a common feature of class actions routinely dealt with at a remedial phase — the basic injury asserted is the same" wrongful denial of ERISA benefits.).

*Finally*, the named individual plaintiff and class representative adequately is positioned to represent the class, and her interests sufficiently are aligned with them, since Nolan's interest are identical to those of the other class members who are also seeking to enforce the "A+B" benefit. No conflicts of interest are apparent, and the plaintiff does not seek any preferential treatment, except for a banner award, which is discussed above.  *Cf. Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-27 (1997) (distinguishing cases where named plaintiffs' interests conflict with those of other class members); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013) (finding

named plaintiffs inadequate where they had incentives to compromise the interest of the class for personal gain).

The parties also adequately have established that class certification is appropriate under Rule 23(b)(1)(A). Because "ERISA administrators may not discriminate between similarly situated beneficiaries, . . . individual actions by multiple retirees would clearly have created a risk of 'inconsistent or varying adjudications' that 'would establish incompatible standards of conduct'" for the defendants. *Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 280 (6th Cir. 2018) (quoting Fed. R. Civ. P. 23(b)(1)(A)). Certification under Rule 23(b)(1)(A) thus is appropriate to avoid inconsistent adjudications with regard to the interpretation of the DTE Retirement Plan that would establish incompatible standards of conduct for the defendants. *Ibid.*

The Court will certify the settlement class unconditionally.

## V. Attorney's Fees

Class counsel have filed a motion asking the Court to authorize payments of $1,833,333.33 in attorney's fees and $72,707.08 in litigation expenses. Counsel represent that the fee award was calculated as one-third of the settlement common fund, according to the terms of the settlement agreement.

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (quoting *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). "These two measures of the fairness of an attorney's award — work done and results achieved — can be in tension with each other." *Ibid.* "The lodestar method of calculating fees better accounts for the amount of work done, whereas the

percentage of the fund method more accurately reflects the results achieved." *Ibid.* (citations and quotations omitted in this and following citations except as otherwise noted).

The percentage-of-the-fund method is appropriate for evaluating the reasonableness of the attorney fee in this case. The result achieved for the class in terms of the cash payments to be made from the fund was substantial, and class counsel undertook the representation on a contingent fee basis and advanced significant labor and expenses to litigate the case, particularly during the discovery process. The percentage award requested also is appropriate to compensate class counsel adequately for the risk inherent in that contingent fee representation. *In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 747 (9th Cir. 2018) ("Under the percentage-of-recovery method, the requested fee was equal to 25% of the settlement fund [which] was commensurate with the risk posed by the action and the time and skill required to secure a successful result for the class, given that class counsel faced three motions to dismiss and participated in extensive settlement negotiations."); *see also Rawlings*, 9 F.3d at 515 (stating the "trend towards adoption of a percentage of the fund method in [common fund] cases.").

"When conducting a percentage of the fund analysis, courts must calculate the ratio between attorney's fees and benefit to the class." *Gascho*, 822 F.3d at 282. "Attorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class (which includes the 'benefit to class members,' the attorney's fees and may include costs of administration)." *Ibid.* In this case, the benefit to class members includes $3,563,959.59 in payments on class member claims, $1,833,333.33 in attorney's fees, $72,707.08 in litigation expenses, and $30,000 in administrative costs, which comes to a total of $5,500,000. The attorney fees thus represent one-third, or 33.33%, of that denominator, which is within the range of percentage fees that have been approved in complex class actions. *E.g., Huyer v. Buckley*, 849

F.3d 395, 399 (8th Cir. 2017) ("Although 38% is on the high end of the typical range, we cannot say that it is unreasonable when compared to other awards within this circuit." (approving fee petition in class action by borrowers against mortgage loan servicer)); *Gascho*, 822 F.3d at 275 (affirming award of $2.39 million in attorney fees and costs premised on a percentage of the fund assessed by the district court at 21% of the monetary benefit available to the class); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999) (noting that the "majority of common fund fee awards fall between 20% to 30% of the fund"); *Simpson v. Citizens Bank*, No. 12-10267, 2014 WL 12738263, at *6 (E.D. Mich. Jan. 31, 2014) ("Class Counsel's request for 33% of the common fund created by their efforts is well within the benchmark range and in line with what is often awarded in this Circuit."); *In re Packaged Ice Antitrust Litig.*, No. 08-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) ("[T]he requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions." (surveying cases awarding up to 33 1/3% of the common fund)); *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 505 (E.D. Mich. 2008) (approving attorney award of 18% of settlement fund); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich. 2003) ("The requested 17% fee is well within the 20-30% range of reasonable attorney's fees generally awarded in this Circuit.").

In this case, however, 33.33% of the entire common fund does not properly allocate the risks among class counsel and the class members, and it is not necessary to fairly compensate class counsel for the amount of work done. A more appropriate measure of the attorney's fee is the agreed portion — one-third — calculated on the net settlement amount, that is, after the deduction of expenses, including the administrative expense incurred with the retention of Newport Group, the independent fiduciary. The expenses documented by class counsel, including that

administrative expense, total $87,707.08, leaving a net settlement fund after litigation expenses of $5,412,292.92. One-third of that sum is $1,804,097.64. The Court believes that an attorney fee in that amount fairly compensates class counsel, and it recognizes the amount of work performed and the results achieved.

Consideration of the *Moulton* factors also favors approval of an attorney's fee in that amount. *See Moulton v. U.S. Steel Corp.,* 581 F.3d 344, 352 (6th Cir. 2009) (determining the reasonableness of an attorney's fee award based on "(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides."). The value of the benefit rendered by plaintiff's counsel is substantial and evidently will result in payments equivalent to 33.5% of A+B damages to all vested class members. That recovery represents a respectable middle ground within the range of statutory damages that they could have hoped to secure through a favorable verdict.

When determining the reasonableness of an attorney's fee, the Court also may elect to "employ[] the lodestar method to determine the fairness of the fee, then . . . cross-check it with the percentage-of-the-fund calculation." *Gascho*, 822 F.3d at 280. Class counsel represent that they have so far expended more than 4,741 hours prosecuting the claims advanced in this litigation. Dividing counsel's percentage fee request by the number of hours expended equates to an attorney's fee award of $381.60 per hour, a reasonable rate for complex class action litigation. *See, e.g.*, *Friske v. Bonnier Corp.*, No. 16-12799, 2019 WL 5265324, at *3 (E.D. Mich. Oct. 17, 2019) (Lawson, J.) (finding attorney's fee request reasonable at a blended rate $574.66 per hour

in consumer class action); *Martin v. Trott L., P.C.*, No. 15-12838, 2018 WL 4679626, at *9 (E.D. Mich. Sept. 28, 2018) (Lawson, J.) (finding attorney's fee request reasonable at a blended rate $570 per hour in consumer class action).  "Generally district courts are free to look to national markets, an area of specialization, or any other market they believe is appropriate to fairly compensate attorneys in individual cases." *McHugh v. Olympia Ent., Inc.*, 37 F. App'x 730, 740 (6th Cir.), *amended on denial of reh'g*, 41 F. App'x 758 (6th Cir. 2002).  Although there are no recent decisions in this circuit opining on hourly rates in ERISA pension plan class actions, courts in other circuits have awarded attorney's fees at far higher hourly rates in similar cases.  *See, e.g.*, *Hurtado v. Rainbow Disposal Co.*, No. 17-01605, 2021 WL 2327858 *19-20 (C.D. Ca. May 21, 2021) (approving hourly rates of $900 and $800 for lead attorneys in ERISA class action); *Pledger v. Reliance Trust Co.*, No. 15-04444, 2021 WL 2253497 *22-23 (N.D. Ga. Mar. 8, 2021) (approving hourly rates of $650 to $1,060 for attorneys in ERISA class action*); Lechner v. Mut. of Omaha Ins. Co.*, No. 18-00022, 2021 WL 424421 *10-11 (D. Neb. Feb. 8, 2021) (approving hourly rates of $535 to $970 in ERISA class action).

Class counsel was retained on a contingent basis and assumed the risk of advancing substantial costs and expenses throughout this litigation.  As noted above, the litigation was complex, and the proceedings hotly contested.  Every indication in the record is that counsel for the class fought ably and hard to vindicate their clients' interests.  Society would do well to reward those attorneys who engage in such practice to defend the rights of hundreds of Michigan retirees. Finally, the attorneys are experienced and well-regarded ERISA class action counsel, deserving of the contingent fee compensation for which they have applied.

Class counsel's requested 33.33% fee calculated on the net settlement to the class is reasonable under the percentage-of-fund calculation method and lodestar cross-check.

VI.  Conclusion

For the reasons stated, the Court unconditionally certifies the settlement class, approves the settlement, allows the reimbursement of expenses from the common settlement fund, approves the banner (service) award to the named plaintiff, and grants the motions for attorney's fees in the amount state above.

Accordingly, it is **ORDERED** that the plaintiffs' motion for final approval of the class settlement and plan of allocation (ECF No. 89) is **GRANTED**.

It is further **ORDERED** that the settlement agreement and plan of allocation is **APPROVED**.

It is further **ORDERED** that the defendants are **APPOINTED** as the administrator of the settlement fund.  The administrator shall receive, disburse, and account for the settlement proceeds as provided by the formula for distribution of the settlement fund set forth in the settlement agreement.  The defendants shall provide and file with the Court and class counsel a report setting forth the distribution of all funds paid by the defendants as called for in the settlement agreement upon completion of the payments made to class members.  After final distribution, class counsel shall file with the Court a certificate that the settlement fund has been disbursed according to the plan, or that funds remain undistributed, as the case may be.  The defendants shall pay the costs of settlement administration.

It is further **ORDERED** that a banner (service) incentive award in the amount of $15,000 is approved for and may be distributed to the named plaintiff, Leslie D. Nolan.  The incentive award may be designated as an expense of administration and paid according to the appropriate priority as outlined in the settlement agreement.

It is further **ORDERED** that class counsel's motion for attorney's fees and litigation expenses (ECF No. 87) is **GRANTED**, and payments from the settlement fund are approved as follows: Class counsel shall receive from the common settlement fund $1,804,097.64 for attorney's fees and $72,707.08 for litigation expense reimbursement, and the litigation expense of $15,000 paid to the Newport Group, the independent fiduciary that evaluated the settlement, is **APPROVED**.

It is further **ORDERED** that this action is **DISMISSED WITH PREJUDICE**; provided, however, that this Court retains jurisdiction over all matters relating to the enforcement of equitable relief, and the administration of the settlement agreement, including allocation and distribution of the settlement fund.

It is further **ORDERED** that the defendants shall remain responsible for completion of the administration of the claims and distribution of the funds, but they may not invade the settlement fund for further reimbursement or payment of fees absent further order of the Court.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date:   November 7, 2022